IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-03378-M

JONATHAN JAMES NEWELL, )
)
Plaintiff, )
)
v. ) ORDER
)
ROY COOPER GOVERNOR'S COVID- )
19 TASK FORCE, et al., )
)
Defendants. )

On December 28, 2020, Jonathan James Newell ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7]. On April 29, 2021, inmate Brian Lorenzo Curlee ("Curlee") moved to intervene or, in the alternative, for joinder. Mot. [D.E. 8]. Plaintiff subsequently moved to pay the remaining balance of his filing fee, Mot. [D.E. 10], and to amend his complaint, Mot. [D.E. 11].

The court summarily GRANTS the motion to amend [D.E. 11]. Fed. R. Civ. P. 15(a)(1).

Pursuant to 28 U.S.C. § 1915A, the court now conducts its initial review of the complaint, as amended, and, for the reasons discussed below, dismisses the action for failure to state a claim.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are

"based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff's Filings:

Plaintiff's initial complaint names as defendants: North Carolina ("N.C.") Governor Roy Cooper ("Governor Cooper"); the COVID-19 Task Force; Doctor Mandy Cohen ("Dr. Cohen"), director of the N.C. Department of Health and Human Services ("DHHS") COVID-19 Task Force;

2

N.C. Attorney General Joshua Stein ("A.G. Stein"); N.C. Department of Public Safety ("DPS") Secretary Erik E. Hooks ("Hooks"); DPS Commissioner of Prisons Todd Ishee ("Ishee"); N.C. Department of Environmental Quality ("DEQ"); Warren County Department of Health and Human Services; "Warren County Municipality [sic]"; ABC 11 Eye Witness News ("ABC News"); and WRAL News. Compl. [D.E. 1] 1–8. Plaintiff generally alleges violations of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the U.S. Criminal Code, the U.S. Constitution's Commerce Clause and Full Faith and Credit Clause, and the First, Fourth, Eighth, Ninth, Tenth, and Fourteenth Amendments. See id. at 9.

Plaintiff specifically alleges, among other things: he contracted COVID-19 at Warren C.I. on December 9, 2020; ABC News and WRAL News "were acting under color of state law" and "conspire[d] with state officials to reduce information and not publicly broadcast prison conditions [sic]"; Governor Cooper, Dr. Cohen, A.G. Stein, and Secretary Hooks ignored the condition of prisoners; the Clerk of Court, District Attorney, and Judges of Warren County "were aware of the fact that defendants['] actions could harm the prison . . . and ignored the matter of Warren [C.I.] was not in compliance with executive orders for COVID-19 [sic]"; Warren County Department of Health and Human Services and the DEQ "failed to work with defendants" and Commissioner Ishee, allowing inmates to be infected "even after multiple warnings by plaintiff"; defendants violated the ADA and failed "to provide COVID-19 metrics on inmate medical concerns . . . leaving prisoners and staff isolated and powerless and uninformed citizens [sic]"; "defendants retaliated on the plaintiff for reporting deficiencies of executive orders [sic]"; "when COVID-19 entered facility by staff, plaintiff with underlying disabilities tried to report to the defendants to no avail and the media also ignored all by deliberate indifference standards [sic]"; Governor Cooper

3

and Dr. Cohen "continued to cite social distancing and other measures but failed to report in the media that inmates were excluded and only spoke of congregate care long term care facilities for the elderly [sic]"; "the rise in [COVID-19] rates was by direct involvement to hide from the public what was going on in the prison [sic]"; "from March to December 2020, the COVID-19 task force worked with the media to present facts at a false number [sic]"; defendants prioritized "commerce over public health"; "prisoners were treated like second class citizens"; "there is a demonstrated causal connection between the illness of being infected by COVID-19 and the media acting under color of state law invalidating public safety concerns [sic]"; "the [ADA] was impacted when social distancing construction efforts were denied same as citizens as the lack of public accommodations lead to the plaintiff being infected with COVID-19 [sic]"; he was at increased COVID-19 risk due to high blood pressure, thyroid issues, and morbid obesity; he "reported multiple violations of executive orders by prison staff only to be denied the right to protect public safety and health [sic]"; Governor Cooper and Dr. Cohen "worked with the media" and "air[ed] lower numbers of COVID-19," placing him at risk for exposure; his letters to the media were "to no avail"; and the "standard is met for intentional infliction of emotional distress." Id. at 9–15.

For relief, plaintiff seeks: "A common law declaration of an [apology]"; a "state health care package coverage for life paid for by the state"; "free college degree correspondence with the UNC system while incarcerated"; "free medical services while incarcerated"; that "the media be sanction for placing the public health at risk [sic]"; that Governor Cooper be "sanctioned" and Doctor Cohen be admonished; an "injunction to protect inmates from further harm by placing a conservator over the N.C. State Prison System [sic]"; legal costs; $1.00 in nominal damages; at least $25,000.00 in punitive damages; at least $25,000.00 in compensatory damages; "no immunity

4

to defendants for retaliation"; that the DEQ "act as a conservator"; to "enhance legal action to all medical mental health prisons for the state prison system [sic]"; "free expense higher education to benefit for lost opportunity amid COVID-19"; "to utilize UNC degree to improve upon disability and impact of COVID-19 infection"; "criminal negligence charges for each [] Warren [C.I.] inmate death for the failure of enforcing executive orders with public notification in the media [sic]"; "enforcement by [the A.G.]"; "to alter facilities readily accessible and usable by individuals with disabilities"; that the A.G. "investigate[,] allowing plaintiff to testify in any proceedings dealing with Warren County or its jurisdiction of the prison system [sic]"; "fines for individuals with disabilities being denied services"; "civil penalties against defendants not exceeding $50,000"; and "class action status granted to any citizen impacted by COVID-19 residing or working in Warren [C.I.] or Warren County along with adjacent counties [sic]." Id. at 16–18.

In his amended complaint, plaintiff again names as defendants Governor Cooper, Dr. Cohen, Hooks, Ishee, WRAL News, and ABC News, and newly names as defendants DEQ Secretary Michael Regan ("Regan"), Warren C.I. Warden Shanticia Hawkins ("Hawkins"); DPS Regional Director Cynthia Thornton ("Thornton"); Correctional Officer ("C.O.") Jane Doe Mayo ("Mayo"); and "Carolina Press Print Media [sic]." See Am. Compl. [D.E. 11-1] at ¶¶4–15.

Plaintiff alleges, among other things: defendants knew of the substantial risk of serious harm of allowing Warren C.I. inmates to be double bunked during the COVID-19 pandemic, and they failed to respond reasonably when they took no action "beyond placing signs on walls and handing out one mask" and staff was "not wearing masks nor social distancing"; "defendants forced lockdown and social distancing of citizens" but Warren C.I. staff only complied when "on camera"; "defendants failed to utilize sanitation device to fumigate dormitories[;] instead staff

5

utilized them as cooling devices"; Warren C.I. defendants "erred in judgment by cross contaminating dormitories" and "misled the public record" as to the number of inmates infected; Warren C.I. allowed defendant C.O. Mayo to work while sick in December 2020; plaintiff tested positive for COVID-19 on December 9, 2020; Governor Cooper, Dr. Cohen, Regan, Hooks, and Ishee "continued to mislead the public about the state prison system"; "media defendants . . . were contacted by family members of prisoners at Warren C.I. to report the false information" but took no action; the maladministration of state executive branch officials failed "to uphold standards within state prison system impacted plaintiff's health and the clusters of COVID-19 thus impacted the state and its citizens fundamental right to life, liberty, and pursuit of happiness considered as individual possession on the autonomy of plaintiff [sic]"; "the impact of COVID-19 thus far has led to new diagnosis of diabetic lifestyle and respective changes, vision problems, blood pressure instability which could impact medications for mental health [sic]." See id. at ¶¶16–27.

Plaintiff argues that: in violation of the Ninth and Tenth Amendments, Governor Cooper "engaged in genocide against state prison inmates [sic]"; in violation of the ADA and the Rehabilitation Act of 1973, "the impact of COVID-19 disrupted major life activity of lifelong chronic illness related to diabetic care services and cost [sic]"; "intentional infliction of emotional distress applies"; defendants placed him at risk, violating the Eighth Amendment and his Fourteenth Amendment Equal Protection rights; "[t]he infection transferred into the community" causing interference with federal regulation of commerce; "[a]ccomplice liability applies to each listed defendant . . . under 18 U.S.C. § 2; there is a duty under the ADA and Eighth Amendment to provide medical care; and defendants and the COIVD-19 taskforce "violated freedom of speech of inmates," made false statements, and falsified records through the media. Id. at ¶¶28–35.

6

For relief, plaintiff seeks, among other things: nominal, compensatory, and punitive damages; "a post COVID-19 physical of plaintiff to determined life-long impact"; declaratory relief as to Governor Cooper's maladministration and "genocide" by Regan and Dr. Cohen; "for the media defendants to be brought under the jurisdiction of the FCC and a grievance to be filed on behalf of N.C. Prison inmates [sic]"; "for a special master to govern the medical services section for post COVID-19 physical of state prison inmates"; "for a special master to audit and hold an inquiry over the state prisoners denied the right to file grievances"; for Ishee, Hooks, and Governor Cooper "to be sanctioned and by sanctions reserved for COVID-19 death benefit [sic]"; an A.G. investigation including an audit of inmate releases and deaths, evaluation of hiring practices, services to protect inmates from COVID-19, and grievance procedures; civil penalties against the DPS, the DHHS, the DEQ, and Warren C.I.; "removal of state immunity"; "granting plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution and the laws of the United States and [that Governor] Coper attempted genocide [sic]"; "restructure the report of the media staff which knowingly, willingly, voluntarily act in a manner which harms the public safety and health [sic]"; a preliminary and permanent injunction ordering Carolina Press, ABC News, and WRAL News "to report the misconduct of defendants Cooper, Regan, Cohen, Hawkins, and Ishee along with Erik Hooks. Plus to report positive stories of Warren Prisoners were the ones that fought to report COVID-19 to protect public safety [sic]"; a jury trial; and "any additional relief this court deems just, proper, and equitable." Id. at ¶¶36–53.

Discussion:

As an initial matter, ABC News, WRAL News, "Carolina Press Print Media [sic]," the COVID-19 Task Force, the DEQ, the Warren County Department of Health and Human Services,

7

and "Warren County Municipality [sic]" are not a "person" amenable to suit under section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); see also West, 487 U.S. at 48.

Next, to the extent that plaintiff seeks either to raise claims on behalf of other inmates or to bring a class action as a representative party, he may not do so. See Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005) (finding *pro se* plaintiff's right to litigate for himself does not create a right to litigate for others); Hummer v. Dalton, 657 F.2d 621, 625–26 (4th Cir. 1981) (finding a prisoner cannot act as a "knight-errant" for others); Inmates v. Owens, 561 F.2d 560, 562–63 (4th Cir. 1977) (finding a *pro se* inmate lacks standing to sue on behalf of another inmate); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) ("Ability to protect the interests of the class depends in part on the quality of counsel . . . and we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others" (internal citation omitted)); see also Lescs v. Martinsbure Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished) (noting that "it is plain error to certify a class when a pro se litigant seeks to represent the class" (citation omitted)); Fowler v. Lee, 18 F. App'x 164, 165 (4th Cir. 2001) (per curiam) (unpublished) (noting that "this circuit does not certify a class where a pro se litigant will act as representative of that class." (citation omitted)).

Next, the court discerns no viable §1983 claims premised on the Civil Rights Act, the Fourth Amendment, or the Full Faith and Credit Clause. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see also Adkins v. Rumsfeld, 464 F.3d 456, 467 (4th Cir. 2006) (finding "the [Full Faith and Credit Clause] clause does not impose on Congress any requirement

8

of substantive uniformity in any area of the law"). Further, because plaintiff does not plausibly allege that his rights were injured by state law mandating "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter," Granholm v. Heald, 544 U.S. 460, 472 (2005) (citation and quotation marks omitted), he also fails to state a plausible §1983 claim under the Commerce Clause, cf. Dennis v. Higgins, 498 U.S. 439, 441 (1991).

Next, plaintiff's reliance on the Ninth and Tenth Amendments also is misplaced. See, e.g., Stone v. City of Prescott, 173 F.3d 1172, 1175 (9th Cir. 1999) ("Plaintiffs cannot found a [§] 1983 claim on the Tenth Amendment because it is neither a source of federal authority nor a fount of individual constitutional rights."); Dyson v. Le'Chris Health Sys., Inc., No. 4:13-CV-224-BO, 2015 WL 134360, at *3 (E.D.N.C. Jan. 9, 2015) (the Ninth Amendment provides "no independent constitutional protection . . . which may support a §1983 cause of action." (citations omitted)).

Turning to plaintiff's Eighth Amendment claims, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires a determination "whether the deprivation of the basic human need was *objectively* 'sufficiently serious[.]'" Id. The second prong requires a determination "whether *subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" Id. (citations omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

9

Deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (noting a plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." (quotation omitted)).

Here, plaintiff's claims about his COVID-19 infection and protocols at Warren C.I. fail to plausibly allege that defendants actually knew of, but disregarded, a substantial risk of serious harm to plaintiff or acted with the requisite culpable state of mind. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting a deliberate indifference claim requires proof of "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction."); De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (surviving initial review requires inmate to plausibly allege both "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." (quotation and alterations omitted)); Iko, 535 F.3d at 241; Wright, 766 F.2d at 850 (requiring a section 1983 plaintiff to "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights," but finding that mere knowledge of such a deprivation does not suffice (internal quotation marks omitted)); see also Wilson v. Williams, 961 F.3d 829, 842–43 (6th Cir. 2020) (rejecting claim that the Federal Bureau of Prisons was deliberately indifferent to inmate health and safety because its protocols failed to prevent the spread of COVID-19).

10

Plaintiff also fails to state a supervisory liability claim under the governing standard. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Although plaintiff seeks review of prison grievance procedures, Am. Compl. [D.E. 11-1] at ¶42, prisoners do not have a constitutional right or due process interest in grievance procedure, see Adams, 40 F.3d at 75 ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) ("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example.").

Next, for his a retaliation claim to survive initial review, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right," and also must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of a constitutional dimension. Adams, 40 F.3d at 74–75. Here, because plaintiff's bare assertion merely "labels" defendants' actions as retaliation, see Twombly, 550 U.S. at 555, Giarratano, 521 F.3d at 304 n.5, he also fails to state a cognizable retaliation claim, Adams, 40 F.3d at 75.

To the extent plaintiff instead alleges that defendants retaliated against inmate free speech rights, see Am. Compl. [D.E. 11-1] at ¶34, plaintiff's bald assertions fail to plausibly allege the required causal relationship between the purported First Amendment activity and adverse action, cf. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018); Booker, 855 F.3d at 540, 544, and plaintiff again fails to provide specific supporting facts necessary to state a cognizable retaliation claim, see Twombly, 550 U.S. at 555; Adams, 40 F.3d at 75.

11

To the extent plaintiff instead seeks an investigation of, or criminal charges against, defendants, see Compl. [D.E. 1] at 10, 16, plaintiff lacks any such right, see, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))).

Turning to plaintiff's equal protection claims, see Am. Compl. [D.E. 11-1] at ¶31, the Fourteenth Amendment's Equal Protection Clause provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § I. This clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, plaintiff's allegations fail to plausibly allege that he was treated differently from similarly situated individuals and are too threadbare to state a viable equal protection claim. Cf. id.; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; see also Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997) (finding inmates are not a suspect class under equal-protection analysis).

The court now turns to the ADA and Rehabilitation Act claims. Compl. [D.E. 1] at 9, 13; Am. Compl. [D.E. 11-1] at ¶¶30, 34. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides a qualified person with a disability

12

shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "[D]espite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012). Thus, to establish a violation of either statute, plaintiff must show that he 1) has a disability, 2) is otherwise qualified for the benefit in question, and 3) was excluded from the benefit due to discrimination. Id. at 461–62 (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999)).

Here, even liberally construed, plaintiff's filings are unclear as to the nature and extent of his alleged disability and do not plausibly allege actual discrimination or exclusion based upon this disability. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Halpern, 669 F.3d at 461–62; Baird, 192 F.3d at 467; see also Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 254 (4th Cir. 2006); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding the "[ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled."). Thus, plaintiff likewise fails to state a cognizable claim under either the Rehabilitation Act or the ADA.

Next, plaintiff's request for injunctive and declaratory relief presumptively was mooted by his intervening transfer from to Nash C.I. See N.C. Dep't of Pub. Safety, Offender Pub. Info. https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0788137&searchOffenderId=0788137&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (search by inmate number) (visited Feb. 10, 2022) (noting plaintiff's transfer from Warren C.I. to Nash C.I. on January 25, 2022); see also Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009)

13

("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." (citation omitted)); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (finding prisoner's request for injunctive relief mooted by intervening transfer). The court also does not discern that any exception to the mootness doctrine applies. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Williams v. Ozmint, 716 F.3d 801, 809–10 (4th Cir. 2013).

Alternatively, even if his request for injunctive relief were not moot, plaintiff nevertheless fails to show likelihood of success on the merits, extraordinary circumstances, and clear entitlement to the requested relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting the Supreme Court has rejected the standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); see also Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

Finally, because plaintiff's complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015),

14

and the court declines to exercise supplemental jurisdiction over lingering state-law claims, including allegations of "intentional infliction of emotional destress," see 28 U.S.C. § 1367(c)(3) (granting courts discretion to decline supplemental jurisdiction over a pendent State claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding the district court possesses "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

Conclusion:

In sum, the court: GRANTS the motion to amend [D.E. 11]; DENIES AS MOOT plaintiff's motion seeking to pay the balance of his filing fee; and DISMISSES plaintiff's complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). In light of this dismissal, the court also DENIES AS MOOT Curlee's pending motion to intervene or for joinder [D.E. 8]. Curlee may re-file this complaint in a separate action, but the court make no finding as to his likelihood of success on the merits. The clerk shall close the case.

SO ORDERED, this 14th day of February 2022.

_Richard E Myers II_
RICHARD E. MYERS II
Chief United States District Judge